IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERONIMO ROSADO. JR., | ) | |
|         Plaintiff | ) | C.A. 09-156 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| ROBERT VIRGIL, et al., | ) | |
|         Defendants. | ) | |

## OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter.

### I.    INTRODUCTION

#### A.    Relevant Procedural History

On June 29, 2009, Plaintiff Jeronimo Rosado, Jr., a prisoner formerly incarcerated[2] at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Roger S. Virgil, M.D. ("Virgil"), and Doctor Pierson ("Pierson"), ophthalmologists under contract to perform medical services for inmates at SCI-Forest; Dr. Robert Maxa ("Maxa"), identified as director of the medical department at SCI-Forest; Rhonda Sherbine (Sherbine") and Nicole Brown ("Brown"), physician assistants at SCI-Forest; James Wesberger ("Wesberger"), identified as the "HIV/AIDS Specialist" for SCI-Forest; and the following employees of the Pennsylvania Department of

---

[1] All parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 3, 102, 104, 105, 106, 109].

[2] Plaintiff is no longer incarcerated and currently resides in West Chester , Pennsylvania. (See ECF No. 181).

1

Corrections (collectively referred to herein as "DOC Defendants"): Donald Skunda ("Skunda"); Brenda Hale ("Hale"); T.L. Grahm ("Grahm"); Edward Whitman ("Whitman"); Paul A. Ennis ("Ennis"); Kurt Granlund ("Granlund"); Eric D. Ray ("Ray"); Stephanie Whitmyre ("Whitmyre"); Daniel G. Lee ("Lee"); Deborah Lipchey ("Lipchey"); Paul Zofcin ("Zofcin"); Michael C. Barone ("Barone"); Rachel Springer ("Springer"); Judith B. Selvey ("Selvey"); Catherine McVey ("McVey"); C/O/ Thompson ("Thompson"); K.P. Reisinger ("Reisinger"); Jeffrey A. Beard ("Beard"); Amie Powers ("Powers"); Sharon M. Dombrowski ("Dombrowski"); Christina Kennedy ("Kennedy"); James E. Horne ("Horne"); John Sawtelle ("Sawtelle"); Edward Wojock ("Wojock"); Timothy L. Mark ("Mark"); David S. Novitsky ("Novitsky"); Ms. Lutz ("Lutz"); Lisa Headinger ("Headinger"); Mr. Houghes ("Houghes"); and DA Woodard ("Woodard").

By Opinion and Order dated September 27, 2010, this Court dismissed all claims against Defendants Pierson, Maxa, Sherbine, and Brown, and said Defendants were terminated from this case. Defendants Virgil, Wesberger and the DOC Defendants remain.

In his *pro se* Complaint, Plaintiff claims that Defendants Virgil and Wesberger were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment and Fourteenth Amendment due process rights. In addition, Plaintiff makes several claims against various DOC Defendants, including: (i) Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Skunda, Headinger, and Hale; (ii) a retaliation claim arising from a misconduct Plaintiff received from Defendant Thompson; (iii) a due process claim regarding institutional programming; (iv) a due process claim regarding the denial of parole; (v) a due process claim arising from his placement on grievance restriction; (vi) a due process claim that he was denied witnesses at a misconduct hearing; (vii) an access to courts claim alleging that SCI-Forest's therapeutic community policy was not kept in the library; and (viii) an access to courts claim alleging that a package he mailed to the Parole Board was intercepted.

2

Defendants Wesberger, the DOC Defendants, and Virgil each filed an Answer to Plaintiff's Complaint. (ECF Nos. 90, 103, and 115, respectively). Defendant Wesberger also filed a cross-claim against all Defendants seeking indemnification in the event he is found liable for Plaintiff's claims against him. [ECF No. 90]. This cross-claim was answered by Defendant Virgil [ECF No. 94] and the DOC Defendants [ECF Nos. 108, 137]. The parties have since completed discovery.

All Defendants have now filed motions for summary judgment [ECF Nos. 164 (Wesberger), 173 (DOC Defendants), and 177 (Virgil)], arguing that Plaintiff's claims fail as a matter of law. Plaintiff has filed his own motion for summary judgment [ECF No. 182], as well as a response in opposition to the Defendants' motions for summary judgment. [ECF No. 183]. This matter is now ripe for consideration.

### B. Relevant Factual History

On December 12, 2006, Plaintiff received a corneal transplant in his right eye, which was performed by Defendant Virgil "inside basement of an unknown hospital." (ECF No. 6, Complaint, at ¶ 38). Plaintiff alleges that after surgery the stitches were left in his eye too long, which allegedly caused an infection. (Id.).

Plaintiff alleges that on October 2, 2008, fluorescent eye drops were placed in his right eye, which revealed an ulceration inside the cornea due to a herpes simplex infection. (Id. at ¶ 39). He alleges that the infection spread from his right cornea to his left eye's upper eyelid and into his mouth. (Id. at ¶ 40). He was prescribed "blue oblong pills" that he took five times daily for a period of five days, which made the infection go away in his eyes and face; however, he alleges that he continues to have an ulceration inside his mouth "the size of a cigarette butt," for which he claims Defendant Skunda has denied proper treatment. (Id.). In addition, Plaintiff alleges that the herpes "ulceration" occasionally recurs inside both eyes, causing watering, blurry vision, sensitivity to light, and sharp pain. (Id. at ¶ 41). Plaintiff alleges further that

3

complications from the right eye surgery performed by Defendant Virgil has severely impaired the vision in his left eye. (Id. at ¶ 42).

On August 22, 2008, Plaintiff filed a grievance against Defendant Skunda, among others, "for minimizing the rash around [his] eyes/face" and for failing to check the back of his right eye. (Id. at ¶ 43). Defendant Skunda responded to Plaintiff's grievance by informing Plaintiff that the rash was eczema and was unrelated to the health of his eyes. (Id. at ¶ 45).

Plaintiff believes that the herpes infection "may have been triggered by the chemicals found in eye drops or by the infected corneal transplant...." (Id. at ¶ 52). He further opines that the swelling in his right upper eyelid may be a "Chalazion Disorder caused by the infected corneal transplant that triggered a blockage of an oil secreting gland," which he believes then caused cataracts in his right eye and "Myasthenia Gravis, an Autoimmune Disorder ... causing the left and right upper eye lid to droop down and curl...." (Id. at ¶ 53). Alternatively, Plaintiff opines that the cataracts in his right eye "may have been caused by long term treatment with Corrico Steroid drugs," for which he claims Defendants Virgil and Skunda, among others, are responsible because they should have prescribed the "right eye drops" and taken him off the "Corrico Steroid drugs on time." (Id. at ¶ 56).

Plaintiff states that he continues to experience vision problems associated with his corneal transplant, for which Defendant Virgil issued him gas permeable contact lenses. (Id. at ¶ 70). Plaintiff claims that Defendants Virgil and Skunda, among others, led him to believe that the stitches in his eye were permanent, but he alleges that they should have been removed one year after his surgery. (Id. at ¶¶ 73-79). The stitches were ultimately removed on January 9, 2009, a little more than two years after the surgery. (Id. at ¶ 80).

Plaintiff claims that Defendants Hale, Virgil, and Skunda, among others, should have tested him for HIV/AIDS before his corneal transplant surgery. (Id. at ¶ 84). Instead, Plaintiff underwent a blood test on or about November 5, 2008, and on November 11, 2008, Defendant Hale informed him that the test results came back negative for HIV/AIDS. (Id. at ¶ 86).

4

Nonetheless, on November 25, 2008, while reviewing his medical records, Plaintiff noticed that his HIV/AIDS test results were sent to Defendant Wesberger, and that his medical file was marked with a red tag, which he believes indicated that he was HIV/AIDS positive. As a result, Plaintiff became stressed and began questioning the veracity of Defendants Hale, Skunda and Virgil, among others. (Id. at ¶ 88-89). Accordingly, a re-test was done on March 16, 2009, and came back "non-active." Nonetheless, Plaintiff claims the result was fabricated. (Id. at ¶ 91). Instead, Plaintiff believes that HIV/AIDS caused the complications that allegedly resulted from his corneal transplant, including the Chalazion Disorder and Myasthenia Gravis he claims to have contracted. (Id. at ¶¶ 91-92).

Aside from his medical complaints, Plaintiff alleges, *inter alia*, that all Defendants worked together to keep him from participating in the Therapeutic Community Program that would make him "eligible for possible parole release." (Id. at ¶ 111).

### C. Standard of Review
#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving

party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### **2.** *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### **D.** **Discussion**
#### **1.** **Eighth Amendment claims**

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[3] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Here, Plaintiff's allegations are essentially comprised of his lay opinions and self-diagnoses regarding the nature and cause of various medical symptoms he has suffered since his corneal transplant in December 2006, and his belief that Defendants Virgil, Skunda, Headinger, and Hale, among others, have either caused, or failed to provide "proper treatment" for, the numerous medical "disorders" of which he claims to be suffering. In particular, Plaintiff: (i) takes issue with the various ointments and eye drops he has been prescribed to treat his symptoms; (ii) challenges the length of time stitches remained in his eye after the corneal transplant surgery; and (iii) questions the veracity of Defendants Virgil, Skunda, Wesberger, and

---

[3] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Hale regarding the negative results of his HIV/AIDS tests, to the extent that he has convinced himself that he not only has the virus, but that it caused the complications he claims to have experienced since the surgery. None of these claims are supported by the evidence of record.

In fact, the plethora of medical records in this case makes clear that none of the Defendants were deliberately indifferent to Plaintiff's serious medical needs. (See ECF Nos. 170-1 through 170-11). Instead, Plaintiff's claims are based primarily on his unsubstantiated "beliefs" and his misguided attempts to second-guess medical decisions. For instance, Plaintiff's sole claim against Defendant Headinger is that she gave him the "wrong" eye drops, because she used Prednisolone Opthalmic instead of the prescribed Prednisolone Forte. However, the record reflects that Prednisolone Opthalmic is simply the generic name for Prednisolone Forte, and, thus, they are the same medication. (See ECF No. 174-1, pp. 5-7 and p. 13, ¶ 7). Similarly, Plaintiff's claim that Defendants lied to him about the negative results of his HIV blood tests is unsupported by any contrary medical evidence confirming his "belief" that he is HIV positive.

In short, Plaintiff's allegations make clear that he is quite dissatisfied with the medical treatment he received at SCI-Forest and believes that a different course of treatment would have been more appropriate and beneficial. However, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110. Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). As a result, summary judgment will be granted in favor of Defendants Virgil, Skunda, Wesberger, and Hale with regard to Plaintiff's Eighth Amendment deliberate indifference claims against them.

**2.     Fourteenth Amendment Medical Treatment Claim**

To the extent Plaintiff is challenging the adequacy of the medical treatment he received from Defendants Virgil, Wesberger, Skunda, and Hale, under the due process clause of the Fourteenth Amendment, such claim must be dismissed because Plaintiff has already brought the identical claim under the Eighth Amendment. See Albright v. Oliver, 510 U.S. 266, 273 (1994)(holding that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims")(citation omitted); County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); and Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("Appellant's due process clause is identical to his Eighth Amendment claim; he must bring the claim pursuant to the more explicit constitutional amendment").

Alternatively, to the extent Plaintiff is attempting to state a Fourteenth Amendment claim on due process grounds, Plaintiff has failed to plead the existence of a constitutionally protected liberty or property interest that has allegedly been deprived by Defendants Virgil, Wesberger, Skunda, and/or Hale. See Board of Regents v. Roth, 408 U.S. 564 (1972)(to establish a due process claim under the Fourteenth Amendment, a plaintiff must show (1) the existence of a constitutionally protected liberty or property interest; and (2) constitutionally deficient procedures by the state in its deprivation of that interest). As a result, summary judgment will be entered in favor of Defendants Virgil, Skunda, Wesberger, and Hale, with regard to Plaintiff's Fourteenth Amendment medical treatment and/or due process claims against them.

**3.     Retaliation Claim**

Plaintiff claims that Defendant Thompson issued a misconduct against him on June 16, 2008, in retaliation for Plaintiff's filing of grievances.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir.1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, a prisoner must demonstrate:
1) the conduct in which he was engaged was constitutionally protected;
2) he suffered "adverse action" at the hands of prison officials[4]; and
3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.[5]

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff were not engaging in the constitutionally

---

4

To show an "adverse action," the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. See also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

5

In analyzing the third element of the retaliation test, the court must determine whether there is a causal connection between the exercise of the constitutional rights and the adverse actions. "A suggestive temporal proximity between the protected activity and an alleged retaliatory act may be sufficient to meet the causal link requirement of the prima facia case." Allah v. Al-Hafeez, 208 F.Supp.2d at 535, citing Rauser, 241 F.3d at 330 and Johnson v. Rendell, 56 F.Supp.2d 547, 552 (E.D. Pa. 1999).

protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The record here shows that Defendant Thompson issued a misconduct against Plaintiff on June 16, 2008, for Threatening an Employee or his Family with Bodily Harm; Using Abusive, Obscene, or Inappropriate Language to an Employee; Refusing to Obey an Order; and Any Violation of a Rule or Regulation in the Inmate Handbook not Specified as a Class 1 Misconduct Charge. ( See ECF No. 174-1 at p. 24). According to the misconduct report, Defendant Thompson observed that Plaintiff had his television on between the hours of 8 a.m. and 4 p.m., which was a violation of "House Rules # 14." As a result, Defendant Thompson reported that he ordered Plaintiff to turn the TV off, in response to which Plaintiff reportedly exclaimed "I don't need to turn my fucking TV off, asshole!" (Id.). Defendant Thompson reported that he then repeated the order, at which point Plaintiff walked toward him in an aggressive manner with clenched fists and said "why don't you come in here and make me turn the fucking TV off." (Id.). After a misconduct hearing was held, Plaintiff was found guilty of the misconduct and sanctioned to 45 days of disciplinary custody. (ECF No. 174-1 at p. 27). The hearing examiner's decision was upheld on appeal to the Program Review Committee, and Plaintiff's further appeal to the Superintendent was dismissed as untimely. (ECF No. 174-1 at pp. 18-22).

Plaintiff asserts that Defendant Thompson's misconduct was issued in retaliation for a grievance Plaintiff filed in May 2008, which was resolved in Plaintiff's favor. The DOC

Defendants do not dispute that filing a grievance is a constitutionally protected activity, nor do they dispute that being found guilty of a misconduct and sanctioned to disciplinary confinement constitutes an adverse action. Thus, Plaintiff's ability to satisfy the first two prongs of his prima facie claim of retaliation is unchallenged. However, the DOC Defendants contend that Plaintiff cannot satisfy the third prong of his prima facie case because he "has presented no competent evidence that would permit a reasonable jury to infer retaliatory animus." Because Plaintiff's allegations demonstrate a suggestive temporal proximity between his filing of a successful grievance in May 2008 and the challenged misconduct he received on June 16, 2008, to, at the very least, raise a genuine issue of material fact as to Plaintiff's ability to satisfy the third prong of a prima facie claim of retaliation, his retaliation claim cannot be dismissed at this point for failure to satisfy this prong. See Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

Nevertheless, the DOC Defendants argue further that, even if Plaintiff has sufficiently set forth a prima facie case of retaliation, he cannot prevail if there is sufficient evidence supporting his guilt of the underlying disciplinary charge. (ECF No. 176, DOC Defendants' Brief, at p. 9, citing Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002)("given the quantum of evidence of [plaintiff's] misconduct, we cannot say that prison officials' decision to discipline [him] for his violations of prison policy was not within the 'broad discretion' that we must afford [prison administrators]")). The Court agrees. The record contains sufficient evidence for the Court to conclude that the challenged misconduct would have issued notwithstanding Plaintiff's prior grievance activity. As a result, Defendant Thompson will be granted summary judgment with regard to Plaintiff's retaliation claim against him.

### 4. Due Process Claims

Plaintiff alleges that his Fourteenth Amendment due process rights were violated by the DOC Defendants with regard to: (i) his participation in institutional programming; (ii) the denial of parole; (iii) being placed on grievance restriction; and (iv) being denied witnesses at a

13

misconduct hearing.

To establish a due process claim under the Fourteenth Amendment, Plaintiff must demonstrate (i) the existence of a constitutionally protected liberty or property interest; and (ii) constitutionally deficient procedures by the state in its deprivation of that interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process. Alvin v. Suzuki, 227 F.3d 101, 116 (3d Cir. 2000).

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973).

### a. Institutional Programming

Plaintiff claims that the DOC Defendants violated his Fourteenth Amendment due process rights by interfering with his ability to participate in SCI-Forest's Therapeutic Community. However, the Third Circuit Court has held that "restriction from participation in prison programs is among the conditions of confinement that an inmate may reasonably anticipate during [his] incarceration," and, thus, does not implicate a protected liberty interest. Arango v. Winstead, 352 Fed. Appx. 664, 666 (3d Cir. 2009); see also Pressley v. Pennsylvania Dep't of Corr., 365 Fed.Appx. 329 (3d Cir. 2010)(holding that being confined in administrative custody for long periods of time, with the concomitant inability to participate in programming, does not implicate a liberty interest and thus no process is due). Since Plaintiff had no protected liberty interest in participating in Therapeutic Community, his due process claim arising from the DOC Defendants' alleged interference with his participation in the program has no legal

14

basis and summary judgment will be entered in favor of the DOC Defendants accordingly.

### b. Denial of Parole

Plaintiff claims that the DOC Defendants violated his due process rights when they denied him parole. However, the granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally-protected liberty interest that is inherent in the Due Process Clause. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979).

Moreover, the Pennsylvania Probation and Parole Act, 61 Pa. Stat. 331.1, *et. seq.*, does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole prior to the expiration of their maximum terms.[6] Thus, the Plaintiff does not have a constitutionally-protected liberty interest that arises under state law. As a result, Plaintiff cannot support a claim based upon a violation of his due process rights related to the denial of parole, and summary judgment will be entered in favor of the DOC Defendants accordingly.

### c. Grievance Restriction

Plaintiff claims that he was placed on grievance restriction in violation of his due process rights. It is well-settled, however, that a prisoner does not have a constitutional right to a grievance procedure. Wilson v. Horn, 971 F.Supp. 943, 947 (E.D.Pa. 1997), citing McGuire

---

[6] See, e.g., McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Mickens-Thomas v. Commonwealth, Bd.. of Probation and Parole, 699 A.2d 792 (Pa. Commw. Ct. 1997) (parole is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd.. of Probation and Parole, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term . . . the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), appeal denied, 637 A.2d 295 (Pa. 1993).

v. Forr, 1996 WL 131130, at *1 (E.D.Pa. Mar. 21, 1996), aff'd 101 F.3d 691 (3d Cir. 1996). It follows, therefore, that placing a prisoner on grievance restriction does not deprive him of a due process right because no protected liberty interest is implicated. See Dantzler v. Beard, 2007 WL 44208 at *7 (W.D.Pa. Jan. 5, 2007)(dismissing a prisoner's claim that the imposition of a grievance restriction violated his Fourteenth Amendment due process rights). Accordingly, summary judgment will be granted the DOC Defendants with regard to Plaintiff's due process claim arising from his placement on grievance restriction.

### d. Denial of Witnesses at Misconduct Hearing

Plaintiff claims that the DOC Defendants violated his due process rights by denying him the right to call witnesses at the misconduct hearing regarding the misconduct that was issued by Defendant Thompson on June 16, 2008, for which he was found guilty and sanctioned to 45 days of disciplinary custody.

The Supreme Court has held that a prisoner's state created liberty interest is limited to those situations that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In Sandin, the Supreme Court considered the question of whether segregated confinement implicated a constitutional liberty interest and concluded that "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. See also Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (placement of a prisoner in administrative custody for a period of 15 months did not impose atypical and significant hardship on prisoner and, thus, did not deprive due process rights).

Thus, the fact that Plaintiff was found guilty of a misconduct and sanctioned to 45 days of disciplinary custody did not implicate a constitutional liberty interest under the Fourteenth Amendment. "Accordingly, because [Plaintiff] had no liberty interest to protect, the refusal to allow him to call his witnesses at the misconduct hearing was not a violation of procedural due

process". Rivers v. Horn, 2001 WL 312236 at *2 (E.D.Pa. Mar. 29, 2001). Accordingly, the DOC Defendants will be granted summary judgment as to Plaintiff's Fourteenth Amendment due process claim arising from the alleged denial of witnesses at his misconduct hearing.

### 5. Access to the Courts Claims

Plaintiff appears to state two access to the courts claims: (i) a claim that a package containing copies of approximately twenty "correspondences and grievances" exchanged between himself and SCI-Forest staff members was "intercepted" by unspecified DOC Defendants; and (ii) a claim that SCI-Forest's Therapeutic Community policy was not available in the law library.

While inmates have the right to adequate, effective, and meaningful access to the courts, Bounds v. Smith, 430 U.S. 817, 828 (1977), the United States Supreme Court restricted who may bring an access to courts claim in Lewis v. Casey, 518 U.S. 343, 355 (1996).[7] The Lewis Court held that, in order to state a claim for a denial of the right of access to the courts, a plaintiff must show actual injury. Id. The plaintiff must show that, as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. Id. at 356. The Third Circuit has further described the Lewis holding:

> to be able to bring a viable claim, the plaintiff inmates ha[ve] to show direct injury to their access to the courts. The Court explained that an

---

[7]

The Lewis Court opined:
> ...Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355.

17

> inmate could show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or [he could show] that he had suffered arguably actionable harm that he wanted to bring before the courts, but was so stymied by the inadequacies ... that he was unable even to file a complaint.

Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

So, under *Lewis*, this Court must determine whether Plaintiff has shown that he lost the ability to present an "arguably actionable claim." Here, Plaintiff's allegations fail to demonstrate that Plaintiff lost the ability to pursue an "arguably actionable claim" challenging either the validity of his sentence or conditions of confinement due to Defendants' alleged actions. Accordingly, Plaintiff's denial of access to the courts claims lack merit and summary judgment will be granted in favor of the DOC Defendants on these claims.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERONIMO ROSADO, JR.,<br>    Plaintiff<br><br>    v.<br><br>ROGER VIRGIL, et al.,<br>    Defendants. | C.A. 09-156 Erie<br><br>Magistrate Judge Baxter |

# **ORDER**

AND NOW, this 28th day of September, 2011,

IT IS HEREBY ORDERED that:
1. The motions for summary judgment filed by Defendant Wesberger [ECF No. 164], the DOC Defendants [ECF No. 173], and Defendant Virgil [ECF No. 177] are GRANTED; and

2. Plaintiff's motion for summary judgment [ECF No. 182] is DENIED.

IT IS FURTHER ORDERED that, in light of the foregoing, Defendant Wesberger's Crossclaim against the other Defendants is dismissed as moot.

The Clerk is directed to mark this case closed.

                                                            /s/ Susan Paradise Baxter
                                                            SUSAN PARADISE BAXTER
                                                            United States Magistrate Judge